Argued October 25, modified November 16, 1915, rehearing denied January 18, 1916.

## FIRST NAT. BANK *v.* SEAWEARD.*

(152 Pac. 883.)

**Pledges—Evidence—Conversion of Collateral.**

1. In a suit brought to declare a deed a mortgage and to foreclose the same, evidence examined and *held* sufficient to warrant a finding to the effect that defendants, who had assigned as collateral security a purchase money mortgage and the notes secured thereby, ratified in plaintiff the title acquired from the purchaser, and therefore could not recover the difference between their indebtedness to plaintiff and the amount of the collateral notes, on the ground that the taking of such deed amounted to a conversion of the collateral.

**Pledges—Notice of Change in Security Pledged as Collateral.**

2. As bearing upon the question of ratification, defendants, who had information that the security had been changed in some manner, and are therefore chargeable with all the facts they might have discovered by making the slightest inquiry. (Citing *McLeod* v. *Despain*, 49 Or. 536 (90 Pac. 492, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276).

**Pledges—Must Act Promptly in Making Election to Abide by or Repudiate Transaction.**

3. Defendants having information that plaintiff had surrendered the notes and mortgage pledged as collateral and accepted a convey-

---

*On pledgee's conversion of pledged property by invalid sale, see note in 43 L. R. A. 737.                                    REPORTER.

ance to the premises from the purchaser, it was their duty to act promptly in making their election to abide by or repudiate the transaction.

### Pledges—Delay of Three Months Will Constitute Waiver to Treat as Conversion.

4. Conceding there was a conversion, and defendants having the option either to repudiate plaintiff's acts and bring an action at law in trover for damages; or to adopt same and hold plaintiff as a trustee for their benefit, their delay for three months before demanding a surrender of the collateral amounted to a waiver to treat the transaction as a · conversion, and the plaintiff is exonerated from such charge.

[As to time within which pledgor may sue to recover pledge or for an accounting, see note in 136 Am. St. Rep. 475.]

### Setoff and Counterclaim—Query, Right to Separate Claim of Codefendant.

5. Plaintiff having joined as defendants both the pledgors and the mortgagors, the latter not having been injured and no allegation being made that plaintiff was insolvent, it is doubtful whether the pledgors can set up an alleged conversion as a counterclaim, in view of Section 401, L. O. L., providing that the counterclaim of the defendant must be one upon which suit might be maintained by defendant against the plaintiff.

### Mortgages—Conditional Sale or Mortgage Distinguished.

6. In a case where purchasers of land, having given purchase money notes secured by a mortgage on the premises, and the same were assigned to plaintiff by the mortgagee as collateral security, conveyed the land to plaintiff under an agreement that they should be allowed to redeem if they desired, by payment of the debt, the transaction was, as to such mortgagors, a conditional sale, and not a mortgage, the debt being extinguished.

### Mortgages—Attorney's Fee in Foreclosure of Absolute Deed as a Mortgage.

7. Section 422, L. O. L., provides that in a suit to foreclose a lien upon real or personal property other than that of a judgment or decree, if it appear that a promissory note or other personal obligation for the payment of money has been given, the court shall also decree a recovery of the amount of such debt, as in case of an ordinary decree for the recovery of money. Defendants S. were indebted to plaintiff, and after selling land and receiving purchase money notes secured by mortgage, delivered such notes to plaintiff as collateral. Afterward plaintiff delivered up the notes and mortgage to the purchaser, and accepted a conveyance of the property. Thereafter this suit was instituted by the plaintiff to declare said deed a mortgage and to foreclose the same, and to recover attorney's fees provided for in· the notes involved herein. *Held* that although the collateral notes provided for attorney's fees, and though the notes representing the principal debt also so provided, plaintiff cannot recover compensation for its attorneys.

### Tender—When Coupled With Impossible Conditions Insufficient.

8. A tender, in order to be available, must not be coupled with impossible conditions; therefore, a tender made by a debtor, which was

coupled with a demand for the surrender of certain collateral notes which the debtor knew his creditor could not produce, will not be sufficient to stop the running of interest, (Citing 27 Cyc. 1407.)

From Malheur: DALTON BIGGS, Judge.

In Banc.  Statement by MR. JUSTICE BURNETT.

T. M. and E. F. Seaweard are partners composing the firm of Seaweard Bros., and will be referred to for convenience as the Seaweards. Emil E. Dean, Earl M. Dean and A. M. Johnston, with their wives, the defendants, will be referred to as the Deans, all for simplicity of expression. On February 14, 1913, the Seawoards were indebted to the plaintiff, the First National Bank of Ontario, on their notes in the sum of $14,437.23; the rate of interest being 10 per cent per annum. About January 1, 1911, the Seawoards had sold to the Deans a quarter section of land, then subject to a first mortgage of $7,000, which encumbrance still exists. As part payment of the purchase price the Deans executed and delivered to the Seawoards five promissory notes, one for $2,000 and the other four for $5,000, which were secured by mortgage upon the land. These were conditioned for annual payment of the interest, with the option to the holder of declaring the whole of both principal and interest due on default in paying any yearly installment. The Deans had paid the $2,000 note. As collateral for their obligations to the bank the Seawoards had indorsed these notes to the plaintiff, and about February 14, 1913, they also assigned to one of the bank officers, for the benefit of the plaintiff, the mortgage securing the Dean obligations. As the result of an effort on the part of the bank to collect the collateral, the Deans, with their wives, conveyed the land to the plaintiff's president for its benefit, receiving the notes, which the bank

marked ''Paid,'' and took from him an option to buy the land within 95 days after February 24, 1913, at the price of $20,000, with interest at 8 per cent per annum from January 1, 1912, to the date of payment; that being the exact amount of their notes and mortgage. The bank, through its officer who held the mortgage, also canceled that instrument. It is alleged by the plaintiff and denied by the defendants that all this was done after consultation with the Seawards, and upon an agreement with them to the effect that the plaintiff was authorized to accept a deed from the Deans, return to the latter their promissory notes, and satisfy the mortgage, granting to the Deans an option to repurchase the premises on the terms named, and taking possession of the property, with the right to receive the rents, issues, and profits therein, subject to an additional option, extended to the Seawards, to repurchase the land at any time on or before November 1, 1913, upon payment of their indebtedness to the plaintiff, together with taxes, interest on the mortgage, and the expenses of maintaining the premises or keeping the same in repair.

The complaint contains a statement to the effect that the bank, acting through its president, entered into possession of the property and managed it, keeping an account thereof up to the beginning of the suit, which showed that the receipts exceeded the disbursements by the sum of $139.02. It is stated in the complaint, also, that although the option was given by the plaintiff to the Seawards to repurchase the tract after the expiration of the Dean option, both the Deans and the Seawards have failed to exercise their privilege or pay any part of the money required. The plaintiff then declares that on March 7, 1913, the Seawards renewed one of their notes, amounting to $1,166.11,

making it payable on or before June 1, 1913. After-
ward, on July 11, 1913, they renewed the others, to
mature on November 1, 1913. The complaint states
likewise that the Seawards have not paid any of their
indebtedness, that plaintiff is still the owner and
holder of the renewed notes, and that certain sums
mentioned are reasonable attorney's fees for their col-
lection. Alleging that the Deans and their wives have
or claim to have some interest in the real property in-
ferior to the plaintiff's lien, the prayer of the com-
plaint is in substance that it may have a judgment
against the Seawards for the amount due upon their
renewed notes, with interest and attorney's fees, that
the deed from the Deans to the plaintiff be decreed
to be a mortgage securing the payment of these notes,
and that the usual decree of foreclosure and sale be
entered upon the same.

This complaint was made against the Seawards and
the Deans and their wives. They all join in an an-
swer, which admits the indebtedness of the Seawards
to the bank, the conveyance by them to the Deans,
with the execution of the notes for $22,000, and the
mortgage to secure part of the purchase price to be
paid by the Deans, the indorsement of them to the bank
as collateral for the Seaweard indebtedness, together
with the transfer of the mortgage for the same pur-
pose. They deny the statements of the complaint to
the effect that the transactions described therein were
had with the consent and acquiescence of the Sea-
wards, and that the latter authorized the bank to ac-
cept the deed from the Deans or give any option to re-
purchase. They deny the renewal of the notes of the
Seawards, the averments about attorney's fees, and
other allegations not necessary to mention. Affirma-
tively the answer gives a history of the indebtedness of

the Seawears, the execution of the Dean notes and mortgage, and their pledge to the bank as collateral for the Seaweard notes, all substantially as alleged in the complaint. They charge that, immediately after securing the assignment of the mortgage, the bank represented to the Deans that it would foreclose the same, as it was the sole owner and holder thereof, and that the proceeding in all probability would leave a deficiency judgment against the mortgagors, who, believing in and relying on such representations, executed the deed already mentioned and delivered it to the plaintiff's president upon a recited consideration of $30,000, but as a fact without consideration of any kind, except the promise to hold the grantors therein harmless from a deficiency judgment. The defendants say that since the reception of the deed the bank has treated the land as its own, and on various occasions has offered the same for sale and entered into sundry contracts to transfer the title for sums greatly in excess of the indebtedness of the Seawears. The following allegation then appears in the answer:

"That on said November 1, 1913, that being a day for the transaction of business and during business hours, to wit, at 1:50 o'clock in the afternoon of said date, defendant T. M. Seaweard, together with his attorney, W. E. Lees, went into plaintiff's place of business, and where the notes of defendants, T. M. Seaweard and E. F. Seaweard, were supposed to be kept, and were payable, in the City of Ontario, Oregon, the banking-room and office of plaintiff bank, and at said time and in said place offered to pay said sum of $15,485.72, that being the total sum claimed and demanded by plaintiff, and that being the total sum, both principal and interest, owing plaintiff by defendants Seaweard and Seaweard, and did then and there tender to H. B. Cockrum, the duly acting and elected cashier of plaintiff bank, a certified check, drawn by

Seaweard Brothers, by T. M. Seaweard, on the Ontario National Bank of Ontario, Oregon, and its payment certified by W. F. Homan, the duly elected and acting cashier of said Ontario National Bank, certifying the said check for said sum of $15,485.72, this being the exact amount claimed as due and owing from defendants, T. M. Seaweard and E. F. Seaweard, and the sum necessary to pay their said account in full, and this being the custom of making payment of like accounts in this part of the State of Oregon, and defendant T. M. Seaweard and defendants' attorney, W. E. Lees, then and there requested and made demand that plaintiff deliver up and return to defendants T. M. Seaweard and E. F. Seaweard their pledged property, to wit, the said four mortgage notes for the sum of $5,000 each, or an aggregate sum of $20,000, principal or face value, and as shown by Exhibits B, C, D, and E of plaintiff's complaint, and a return of said mortgage, a copy of which said certified check is hereto attached, marked Exhibit A of defendants' answer hereto, referred to and made a part of this answer, and at said time and place plaintiff bank, by its said cashier, H. B. Cockrum, he being the only person present, made no objection, either to the sum tendered, nor the medium or kind of money, nor to the manner of payment or tender, nor to anything touching the same, nor has any such or other objections been made to said defendants, or to anyone acting for them, or either of them, subsequent to said November 1, 1913. Plaintiff, by and through its said cashier, at said time and place, to wit, November 1, 1913, and in the office of plaintiff, stated that he and it could not, at that time, deliver said mortgage or said mortgage notes, and failed and refused to state when he or it could deliver them, or that he could or would deliver them, or any of them, at any time, but stated that it was a matter that his father, president of said bank, would have to attend to, and that his father, A. L. Cockrum, president, had just departed for a hunt, or to go hunting, and that he would take it up and attend to it when he returned; but said plaintiff and its said officers and all others

have failed to return to defendants T. M. Seaweard or E. F. Seaweard, or offer to return to them, conditionally or otherwise, said mortgage, or said mortgage notes, or any part of them.''

Alleging their ability to pay the amount mentioned, and that the plaintiff has failed and refused to return to the Seaweards the notes and mortgage pledged for their indebtedness, the latter bring the money into court and deposit the same with the clerk for the plaintiff. The defendants demand judgment for the Seaweards for the difference between the amount tendered and the sum of $20,000, the face value of the Dean notes, with interest thereon from January 1, 1912, that the complaint be dismissed as to all the other defendants, and for further relief.

The reply challenges the answer in material particulars, and admits trying to sell the property for the purpose of realizing enough to pay the Seaweard indebtedness. Plaintiff alleges that its efforts were futile, and were all made by and with the knowledge and consent of the Seaweards. The offer of the certified check, together with the demand for the return of the collateral, are admitted; but the other allegations of the answer in that respect are traversed. A supplemental complaint was filed, covering operations of the farm for the year 1914, averring payment of expenses connected with the land, interest on the first mortgage, for water rents, taxes and the like, showing a total cash paid out of $1,424.05, receipts $390.54, leaving a balance due plaintiff of $1,033.51. It contains allegations about the probable expenses of the premises and receipts for the latter part of 1914 and the crop season of 1915. By stipulation of the parties this pleading was considered as denied by the defendants.

After taking an account on the issues arising on the supplemental complaint, the court found that there remained in the possession of the plaintiff as a result of operating the farm a net balance of $334.24. We shall not disturb this finding, as there is no testimony against, but much for, it. The Circuit Court entered a decree in favor of the plaintiff against the Seaweards for the principal and interest due upon their notes described in the complaint up to the date of decree, less the sum of $334.24, making a net balance in the sum of $17,595.28, with attorney's fees and costs and disbursements.

The decree impressed this amount as a lien upon the land and credited the money deposited by the Seaweards. It also adjudged that the act of the plaintiff in taking the Dean deed and surrendering the notes and mortgage was done with the subsequent knowledge, acquiescence and ratification of the Seaweards, that the bank has not converted any of the property belonging to the Seaweards, and that they have not suffered damage through anything done by the plaintiff. The decree was further to the effect that the deed should be adjudged to be a mortgage, and that upon payment by the Seaweards of the balance due upon the decree at any time prior to the sale of the premises the bank and its president should convey to them the land in question. A sale of the premises was ordered as upon foreclosure of a mortgage, and the defendants were all barred from asserting any interest in the property. They have all joined in this appeal.

                    Modified.   Rehearing Denied.

For appellants there was a brief over the names of *Mr. W. E. Lees, Mr. Geo. E. Davis* and *Messrs. Emmons & Webster,* with an oral argument by *Mr. Lionel R. Webster.*

For respondent there was a brief with oral arguments by *Messrs. McCulloch & Wood.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. Substantially the only controversy of fact is upon the question of whether or not the Seaweards either primarily authorized or subsequently ratified the acts of the plaintiff in taking the deed from the Deans, surrendering to them their notes and satisfying the mortgage. A brief review of the testimony on this subject is *apropos* at the outset. The president, cashier and assistant cashier of the bank all testify that they consulted with the Seaweards about the intended action of taking the deed and surrendering the notes and mortgage, and they approved the same on the ground that it would be much cheaper for all parties concerned to avoid the expense of a foreclosure suit for the purpose of realizing on the mortgage at forced sale. The bank officials also said that within a short time after the execution of the Dean deed they told the Seaweards about it, and they expressed satisfaction over the result. The defendants introduced in evidence a letter of the bank, of date March 1, 1913, as follows:

"Seaweard Bros., Ontario, Ore.

"Gentlemen: Your notes are all due and some of them bear date of 1911. Please call at your earliest convenience and make up new notes. We also want to talk over the deal for the Dean land. We now hold a deed for the land and same will be effective June 2nd., if Dean notes are not paid. [Signed by the president of the bank.]"

One of the Seaweards testifies about the option given to the Deans and the successive option given to

themselves to sell the land for the satisfaction of the amount due the bank. They admit knowing about the deed as early as March 1, 1913, and trying to sell the property under their option; but they plead in their answer that they knew nothing of the surrender of the notes or the cancellation of the mortgage until August 1st. They testify, however, that they did not acquire that knowledge until about September 1, 1913, and then only by first searching the records and finding the marginal satisfaction of the mortgage, and afterward inquiring from one of the makers of the Dean notes, who exhibited them to one of the Seaweards, marked ''Paid.'' It is not pretended on behalf of the defendants that the Seaweards ever expressed to the bank any dissatisfaction or dissent concerning these transactions. It is not disputed that they waited until November 1st, when they offered the certified check, coupled with a demand for the return of the collateral. It is not stated that they even demanded the return of their own note or that the bank refused to receive the check. In the light of all this testimony we conclude that it preponderates in favor of the proposition that the Seaweards ratified the action of the bank in taking the deed and surrendering the notes.

2. Besides the actual statements of the witnesses, there are certain conceded circumstances which must affect the case. It is admitted that the Dean deed, dated February 21, 1913, and recorded February 28th of that year, was known to the Seaweards as early as March 1st. So far as the mere land itself was concerned, the situation was then the same as though the bank had foreclosed the mortgage and bought in the tract at the sale under the decree. This result was accomplished without the expense of such litigation and

was advantageous to the Seawards. They knew that the security had been changed in some manner, and it is a case where they were put upon inquiry, and are clearly to be charged with a knowledge of all they might have learned in March by making the slightest inquiry. It is within the principle of *McLeod* v. *Despain,* 49 Or. 536 (90 Pac. 492, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276), holding that:

"A person who learns of unusual circumstances connected with a transaction in which he is about to be interested, or of such facts as would put a person of ordinary prudence upon inquiry, * * is bound thereby to a knowledge of what could have been discovered by investigation."

3. Moreover, the defendants plead that the Seawards knew of the surrender of the notes and mortgage as early as August 1, 1913. They testify that they became aware of it by September of that year. Whether they discovered it in March or in September, they had the alternative of either adopting the transaction or of repudiating it, and it was their duty to act promptly in making their election. Writing on a kindred subject, Mr. Justice Wolverton, in *McCourt* v. *Johns,* 33 Or. 561, 569 (53 Pac. 601, 604), uses this language:

"When cause exists for rescission, the law requires the party seeking to take advantage of it to act without delay, so that the other party to the contract may be placed as nearly in *statu quo* as possible; and a nonobservance of the rule will generally constitute a waiver of the right to rescind"—citing *Foley* v. *Crow,* 37 Md. 51.

4. Again, conceding, without deciding, that the bank really was guilty of a conversion of the collateral, for which an action of trover would lie, yet the Seawards had the alternative of repudiating the same and bring-

ing an action at law for damages, or they might adopt the same and hold the bank as a trustee for their benefit, and enforce the trust: *Kelly* v. *Matlock,* 85 Cal. 122 (24 Pac. 642). Under all these circumstances, even from the admitted viewpoint of the Seawards, the two or three months' delay in calling upon the plaintiff for a surrender of the collateral counts strongly as showing a waiver of their rights in that particular, and they must be considered in fact as having ratified the action of the bank by not expressing their disapproval when they had knowledge of all the circumstances. Their duty to speak arose at once when they became aware of the whole transaction, and taking them at their word, aside from their denials of knowledge, which are disputed by witnesses for the plaintiff, they must be bound by the situation, in which they did not dissent for more than two months after obtaining a full knowledge of it. As a necessary corollary to this the bank is exonerated from the charge of having converted to its own use the property of the Seawards.

5. Further, if the bank in truth converted the securities of the Seawards to its own use, the transaction would give rise to an action at law in trover for the tort thus committed. This being a suit in equity to subject the land in question to the payment of indebtedness, we may well doubt that it was permissible to interpose as a counterclaim the chose in action for the tort of conversion, especially at the suit of both the Seawards and the Deans, the latter of whom profited by the transaction. It is said in Section 401, L. O. L.:

"The counterclaim of the defendant shall be one upon which a suit might be maintained by the defendant against the plaintiff in the suit; and in addition to the cases cited specified in the subdivisions of Sec-

tion 74, it is sufficient if it be connected with the subject of the suit.''

We cannot conceive that an original suit in equity would lie for the tort of conversion, especially without an allegation that the plaintiff here is insolvent and unable to respond in damages for the wrong alleged.

6. It remains to consider the nature of the trans action as respects the defendants Dean. As already stated, they took a written option giving them the privilege of repurchasing the land upon payment of an amount equivalent to the principal and interest of their notes. The rule is thus laid down by Chancellor Kent, as quoted in *Kramer* v. *Wilson,* 49 Or. 333, 341 (90 Pac. 183, 187), by Mr. Commissioner SLATER, in distinguishing between a conditional sale and a deed absolute on its face, and intended as a mortgage:

''The test of the distinction is this: If the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage; but if the debt be extinguished by the agreement of the parties, * * and the grantor has the privilege of refunding, if he pleases, by a given time, and thereby entitle himself to a reconveyance, it is a conditional sale.''

In view of the fact that the Deans did not assert any right to redeem and have in possession their notes, and the mortgage securing the same has been satisfied, the transaction must be held to be a conditional sale as affects them. Under all the circumstances, the substance of the situation is that the form of the security for the Seaweard indebtedness was changed from that of the Dean notes and mortgage to the deed for the land. On the face of the record the plaintiff holds the property; nevertheless not actually as its owner, but subject to redemption on payment of the debt.

7. As distinguished from an action at law, the plaintiff had no cause of suit directly against the Seaweards upon their notes. Their direct liability to the bank accrued solely by virtue of their promissory notes, upon which only an action at law would lie; and this suit is not properly one to recover the amount due upon those instruments. It is purely a proceeding *in rem* against the land, to realize upon it as collateral for the payment of the Seaweard debt. The plaintiff, seised as it is of the legal title, comes into court and calls upon the Deans to assert or abandon their option to buy the land, and upon the Seaweards to offer anything showing a reduction or discharge of their indebtedness, to the end that a decree may be entered adjusting the rights of the parties in the realty. On the refusal of the bank to accept a proper tender of the amount due to it on their obligations, the Seaweards could have brought suit to redeem the land. On the other hand, in default of payment of the Seaweard notes, the plaintiff here has the corresponding right to carry on this proceeding in the nature of strict foreclosure to compel redemption or sale of the premises. That this is a suit to enforce the collateral, and not a proceeding to recover the original debt of the Seaweards, is shown in *State Bank* v. *Casaccia,* 103 Cal. 641 (37 Pac. 648), and *MacArthur* v. *Magee,* 114 Cal. 126 (45 Pac. 1068).

If the bank had sued upon the Dean notes and foreclosed the mortgage securing the same, it could have recovered attorney's fees provided for in those securities; but it has surrendered the only instruments authorizing an attorney fee in a suit to realize upon the collateral. It cannot recover such a charge upon the Seaweard notes, because this suit is not directly upon them. It was necessary to allege the amount and

nature of the indebtedness of the Seawards to enable the court to make a proper decree disposing of the collateral; but the direct recovery upon the Seaweard notes is not here involved as a matter of law, although the plaintiff is demanding a decree directly upon them. The bank never had a direct cause of suit in equity upon the Seaweard notes, for the reason that they were personal obligations, to enforce which the remedy at law was plain, speedy and adequate. The only equitable relief that ever accrued to the bank had its origin in the Dean collateral notes and mortgage. In legal effect the present suit is an effort to realize upon the collateral in its changed form, and while the relief to be granted may be narrowed, as it is by the surrender of the personal obligations of the Deans, it can never be expanded beyond its original scope. It is plain that, if the Dean collateral had not been given up in exchange for the deed, the bank could not have sued in the same proceeding on both the Seaweard notes and the Dean notes and recovered attorney's fees on both at once. In this effort to realize upon the collateral the relief to be granted cannot rise higher than its source, and if in an original suit to foreclose the Dean mortgage an attorney fee upon the Seaweard notes could not have been allowed, it cannot be permitted here. We are not unmindful of the provisions of Section 422, L. O. L., reading thus:

"A lien upon real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit. In such suit, in addition to the decree of foreclosure and sale, if it appear that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as princi-

pal or otherwise, the court shall also decree a recovery of the amount of such debt against such person or persons, as the case may be, as in the case of an ordinary decree for the recovery of money.''

The debt mentioned there means nothing but the obligation for which the mortgage is directly given. It does not refer to an obligation for which a mortgage and its principal debt are merely collateral. In other words, the complaint in this suit does not state facts sufficient to authorize the direct recovery of the Seaweard debt to the bank, for there has always existed a plain, speedy and adequate remedy at law for such relief. The complaint is potent only for the purpose of applying the proceeds of the Dean collateral to the payment of the Seaweard notes, and there can be no personal decree against the Seaweards in this suit. We conclude, therefore, that plaintiff cannot recover its alleged compensation for attorneys.

8. We pass to the consideration of the effect of the Seaweards offering a check coupled with the demand for the return of the Dean notes. As already stated, the Seaweards knew at the time they offered the check that the bank did not have custody of the original collateral and could not deliver it. They appended to their so-called tender an impossible condition, and having, as we have seen by preponderance of the testimony, ratified the act of the bank in surrendering the notes, they had no right to annex that proviso to the offer of the check. To be available for stopping interest on the demand, the offer to pay must be without restriction, except such as the one making the tender has the right to impose.

''A tender must not be coupled with any other conditions than those which it is the clear legal duty of the mortgagee to fulfill on receiving payment or satisfaction'': 27 Cyc. 1407.

If the Seawards had applied to the bank to pay their debt before the surrender of the Dean notes, they would have had the right as a condition of paying the debt to demand, not only their notes, but the collateral securing the same. Having waited until after the form of the collateral had been changed, in which the preponderance of the testimony shows they acquiesced, the Seawards had no right to demand the impossible from the bank. The tender as a stoppage of interest must be disregarded, because it was coupled with the wrongful condition that the collateral must be surrendered.

All this leads to a modification of the decree of the Circuit Court in the following manner: The plaintiff is entitled to a decree of this court to the effect that if, within 90 days after the filing of our mandate in the Circuit Court, the Seawards shall pay into that court for the plaintiff the balance of principal and interest at 10 per cent per annum of their notes to the date of payment, less the amount of the tender and the balance of $334.24 derived from the farming operations, both to be credited as of June 28, 1915, the date of the decree in the court below, the plaintiff bank and its president, who holds the legal title to the premises, shall convey the same to the Seawards by good and sufficient deed, duly executed and acknowledged, so as to entitle the same to record, and shall thereupon, and not otherwise, be entitled to the money so paid into court. Further, that if the plaintiff shall fail to execute and deliver the deed to the Seawards, or to the clerk of the Circuit Court for them, as thus required, the decree shall stand and operate as such deed. If the Seawards fail so to redeem the land, the same shall be sold in the manner provided by law and the proceeds applied to the payment of the balance so com-

puted, with interest at 10 per cent per annum to the day of sale, together with the expenses of sale, the remainder, if any, to be paid to the Seaweards, and that all the defendants and each of them be otherwise barred and foreclosed from asserting any interest or title in or to the property involved.

MODIFIED.   REHEARING DENIED.

MR. JUSTICE BEAN delivered the following opinion, concurring in part.

I concur in the main part of the able opinion of Mr. Justice BURNETT. However, the plaintiff bank was compelled to institute this suit against the defendants Seaweard to collect the notes given directly by the latter to plaintiff, and I think the bank is entitled to a reasonable attorney's fee in this suit, according to the provisions of the several notes.

# HALL v. CATHERINE CREEK DEVELOPMENT CO.*