Argued March 4, affirmed April 5, 1921.

# HYDRAULIC MINING CO. v. SMITH.

(196 Pac. 811.)

**Mortgages—Decree Held not to have Released Property from Lien of Trust Deed.**

1. In suit to foreclose a trust deed given to secure a timber company's bonds, a mining company not being a party to the decree in such suit, though its name was mentioned in the amended complaint for a time, decree *held* not to have effected release of the mining company's property from lien of trust deed.

**Pledges—Pledgee of Mortgage as Collateral Security may Purchase at Foreclosure Sale and on Accounting Need not Surrender Property.**

2. Where the pledgee of a mortgage as collateral security makes the pledgor a party to foreclosure proceedings and forecloses the pledgor's right of equity in the property, the pledgee may purchase at the sale, and on accounting for the purchase money is under no obligation to surrender the land to the pledgor.

**Pledges—Pledgee of Mortgage as Collateral Security may Purchase on Foreclosure Sale Holding Subject to Reclamation.**

3. Pledgee of a mortgage as collateral security, who forecloses the mortgage securing the collateral, may purchase on foreclosure sale, and holds the property so purchased as he held the mortgage, subject to reclamation by the pledgor on his payment of the debt, the doctrine of merger not applying, as by the foreclosure the land becomes substituted for the mortgage, and the pledgor has the right on payment of the debt which he secured by the assignment to reclaim and hold the land as his own property.

**Limitation of Actions—Payments by Plaintiff Mortgagor Held to have Tolled Statute of Limitations.**

4. Payments made by plaintiff mining company on its mortgage obligation in favor of defendant lender to it and its owners *held* to have tolled the statute of limitations, which has not run against either the deed given by the mining company as security or its notes.

---

2. Right of pledgee to purchase pledged property, see notes in 136 Am. St. Rep. 811; Ann. Cas. 1912A, 524.

4. On effect of payment or acknowledgment by mortgagor to toll statute of limitation as against his grantee or other person holding interest in property through him, see note in 28 L. R. A. (N. S.) 169.

From Josephine: FRANK M. CALKINS, Judge.

Department 1.

This is a suit to quiet title to certain mining property. Defendant, Mrs. Smith, answered that she held the title to the property as security, together with other security, for the payment of $12,500 and interest. A decree was rendered in favor of defendant. Plaintiff appeals.

On March 28, 1902, Jefferson D. Cook and G. E. Howland were engaged in a placer mining enterprise in Josephine County, Oregon, operating the mine and holding title through the medium of a domestic corporation known as Hydraulic Mining Company, in which they were the sole stockholders. About this time they conceived the idea of embarking in certain timber and lumbering enterprises, and to that end desired to acquire timber lands and carry on a sawmilling business. In order to finance their operations, they procured the defendant, Elizabeth A. Smith, to loan them the sum of $12,500 with which to acquire timber lands from the Oregon-California Railroad Company, and otherwise to finance their operations. The agreement for the furnishing of these moneys by Elizabeth A. Smith closed in the name of the Hydraulic Mining Company on March 28, 1902, at which time, in order to secure the payment of the money, the Hydraulic Mining Company, by G. E. Howland, its president, and J. D. Cook, its secretary, executed to Elizabeth A. Smith its deed of conveyance of the various placer mining claims comprising the mining property of the Hydraulic Mining Company, the water rights, and a certain mining lease. Concurrently with the execution of the deed, Elizabeth A. Smith executed to the Hydraulic Mining Company a bond conditioned to reconvey the property on the repayment of the sums loaned with in-

terest at 7 per cent per annum. The bond was attached to and made a part of a concurrent agreement between Hydraulic Company, J. D. Cook, and G. E. Howland, as the first parties, and Elizabeth A. Smith, as the second party, reciting that $6,000 was furnished by Elizabeth A. Smith up to that time, and wherein Elizabeth A. Smith agreed to furnish the balance of $6,500 in installments, and in consideration thereof the first parties further agreed to transfer to Elizabeth A. Smith all lands that should be purchased from the Oregon-California Railroad Company, and to assign all contracts for the purchase of lands from the railroad company as further and additional security for the loan, it being recited in the last paragraph of the contract as follows:

"It being particularly understood and agreed, that the sum of $12,500 is a loan by said second party to the first parties for the purchase of timber lands in Jump-off-Joe District lying in Townships 34 and 35 South, Ranges 4 and 5 West of Willamette Meridian in Jackson and Josephine Counties, Oregon, and all lands purchased or contracted for shall be conveyed by the first parties, or their agent, to said second party for the purpose of securing said sum of $6,000 now paid, and the further sum of $6,500 to be advanced as hereinbefore provided."

The deed aforesaid was immediately placed of record during the year 1902, but the contract was not placed of record by plaintiff until 1917. Elizabeth A. Smith furnished the full sum of $12,500 in installments at various times, and received in evidence of the obligation to repay the same, notes of the Hydraulic Mining Company, guaranteed by Jefferson D. Cook and George E. Howland, due March 28, 1907. These notes have never been surrendered up or canceled, and are still held by the defendant. The principal

is wholly unpaid, and the interest thereon partially so. With the money thus borrowed Messrs. Howland and Cook acquired various tracts of timber land, which they deeded to Elizabeth A. Smith as further security for the notes, and she held the same until about June 10, 1907.

About the year 1905, G. E. Howland and J. D. Cook organized a domestic corporation known as Three Pines Timber Company, and thereafter organized a corporation known as Three Pines Lumber Company, both of which they controlled and managed with the idea that the Three Pines Timber Company should hold the title to the various timber lands which they had acquired, or expected to acquire, and that Three Pines Lumber Company should carry on milling operations thereon. To some greater or less extent these corporations carried on their corporate business, and in the course thereof became indebted to the First National Bank of Southern Oregon, and the Jackson County Bank in various sums of money, for which these banks held conveyances of tracts of timber land. The Three Pines Lumber Company carried on milling operations and paid to trustee Vawter, for the Three Pines Timber Company, stumpage as the timber was cut. From the proceeds of stumpage, trustee Vawter paid Mrs. Smith various sums on account of interest.

In the early part of 1907, or prior thereto, Messrs. Cook and Howland apparently conceived the idea of relieving the financial pressure upon their corporations by putting out a bond issue of $100,000, and negotiations were carried on with the three principal creditors, who were the two banks mentioned and Elizabeth A. Smith, with the end in view of transferring the timber lands held by the various creditors

to the Three Pines Timber Company, and making the same a basis of security for the proposed bond issue. The banks agreed to surrender their security, and to retransfer the same to the Three Pines Timber Company, and receive bonds at par in full of their respective claims and demands. Elizabeth A. Smith agreed and did, pursuant to the written agreement of June 10, 1907, transfer all the timber lands received by her as security to the Three Pines Timber Company, and take as a substituted security therefor $12,500 par value of bonds of the Three Pines Timber Company; but she insisted on retaining as additional security the title to the Hydraulic Mining Company property, which had been deeded to her at the inception of the transaction. She did not surrender up the original notes, but continued to hold the same, holding the bonds mentioned as collateral security in addition to the mining property of the Hydraulic Mining Company. About June 10, 1907, the deal as above outlined was practically closed and the bonds delivered.

At the time of the inception of the above transactions, and until the time of his death in February, 1916, W. I. Vawter, residing at Medford, Oregon, then the president of the Jackson County Bank, and also engaged in the practice of law, tended to the details of the transactions, acting with the advice and on the instructions of Elizabeth A. Smith. In arranging the details of the bond issue of the Three Pines Timber Company, Mr. Vawter was made trustee, and the timber holdings of the company were transferred to him by trust deed, for the purpose of securing the bond issue. In arranging the details of the bond issue, and the delivery of the bonds to the various creditors, it is provided in the trust

instrument, *inter alia,* that bonds to the amount of $100,000 be issued and the proceeds from the sale thereof be expended by the trustee in payment of outstanding indebtedness against the property conveyed to the trustee in the sum of $35,000, due approximately in the following sums: To Jackson County Bank, Medford, Oregon, $7,500; First National Bank of Southern Oregon, Grants Pass, Oregon, $12,500; Elizabeth A. Smith, $15,000. On June 10, 1907, there was delivered to Mr. Vawter for Mrs. Smith, by the Hydraulic Mining Company, a deed of conveyance of the Hydraulic Mining Company property, excepting therefrom the merchantable timber on the patented mining claims. The deed was duly recorded. There was also delivered to Mr. Vawter on Mrs. Smith's behalf an agreement in writing, dated June 10, 1907, executed by the Hydraulic Mining Company, by G. E. Howland, its president, and by Jefferson D. Cook, its secretary, which after reciting the fact of the indebtedness to Mrs. Smith in the sum of $12,500, the fact that the bonds of the Three Pines Timber Company had been delivered to Mrs. Smith, and that the Hydraulic Mining Company had conveyed the mining property described therein to Mrs. Smith, stated that she should reconvey to the Hydraulic Mining Company the mining property when she should have been paid the full sum of $12,500 with interest at 8 per cent per annum from July 1, 1907; and recited further that there should be paid to Elizabeth A. Smith the sum of $12,500, either by the retirement and liquidation of the bonds or from the sale of the mining premises, and in the event that the indebtedness should be paid from the mining property, that there-

upon the bonds should be delivered to the Hydraulic Mining Company or its assigns.

It appears at that time that the interest was not paid to July 1, 1907, but was in arrears $2,039.75, for which the mining company and Messrs. Howland and Cook executed to Mrs. Smith their promissory note and delivered to her as collateral security bonds of the Three Pines Timber Company of the par value of $3,000. Afterwards Cook and Howland sold these bonds and from the proceeds paid the interest note as follows: July 18, 1907, $100; August 8, 1907, $528; and on August 14, 1907, $528.07. The note was surrendered and canceled, and the amounts credited by Mrs. Smith on account of the interest due her on the Hydraulic Mining Company notes. Afterwards the Three Pines Lumber Company paid stumpage to Trustee Vawter from time to time, and distribution was made to the various bondholders, and Mrs. Smith was paid various sums of money up to September 21, 1911, when Trustee Vawter commenced a suit to foreclose the security of the trust deed securing the bonds. Thereafter various sums were paid to the bondholders on account of a certain lease made under receivership. These sums were applied first to liquidate the interest on the bonds, and any surplus was applied to the retirement of bonds one and two. The amounts received by Mrs. Smith were applied upon, but did not fully pay, the interest due upon the notes of the Hydraulic Mining Company, Cook and Howland. During the pendency of the suit brought by Trustee Vawter, further sums were paid to Mrs. Smith from the collection of stumpage. In that suit the First National Bank of Southern Oregon, Jackson County Bank, and Elizabeth A. Smith, as the holders of the majority of the bonds, were joined as

parties plaintiff. The proceedings did not pass to a decree until October 6, 1914. M. Purdin and H. D. Norton appeared in the original complaint as the plaintiff's attorneys. W. I. Vawter appeared in proper person, the only case in which he appeared as attorney for plaintiffs being that in the second amended complaint filed February 11, 1913, where his name was joined with that of H. D. Norton, as defendant asserts, with the intention of appearing in his own proper person as in the preceding action. No order of the court was made adding his name as an attorney of record for the plaintiffs, and he did not assume to appear as an attorney of record thereafter. The suit was finally disposed of by stipulation filed May 3, 1913, by which various things were provided. Among others, the suit was dismissed as to the Hydraulic Mining Company and numerous other defendants that had been added by the second amended complaint; and a decree was provided to be entered for the foreclosure of the bond issue.

In paragraph 5 of the stipulation are listed the items of property, the title to which came to the Three Pines Timber Company, and against which the trust deed was a first lien. This description contains within its purview the Hydraulic Mining Company property by reference to Volume 25 of Deeds, at pages 171, 173. Paragraph 6 enumerates certain property subject to foreclosure, but subject to prior mortgage liens. Certain controversies between Cook and Howland, on one hand, and one Steel, on the other, were partially adjusted and provisions made for complete adjustment by arbitration. By paragraph 7 it was provided that any lien, claim, or right created in or upon any of the other property, other than the property described in paragraphs 5 and 6, "are released

and discharged from the lien of said trust deed or mortgage for the foreclosure of which this suit was brought, and are further released and discharged from this suit, and from the claims of all and singular the parties to this suit.'' The Hydraulic Mining Company was not a party to this stipulation. Elizabeth A. Smith's name was not signed to the stipulation by her regular attorney of record. The stipulation was signed by ''W. I. Vawter, Trustee,'' and ''Elizabeth A. Smith by W. I. Vawter, Her Attorney,'' by the two banks mentioned, Francis R. Steel, The Three Pines Timber Company, G. E. Howland, and Jefferson D. Cook.

After W. I. Vawter died, H. L. Gilkey, by order of the court was appointed trustee, April 7, 1916. After he resigned George Lundburg was, by order made March 3, 1917, appointed to complete the trust. Execution was issued on the decree of foreclosure April 28, 1916, and the property was bid in by H. L. Gilkey, as trustee, for the aggregate sum of $83,000. A sheriff's certificate of sale was issued, but no sheriff's deed was ever issued. Delinquent taxes accumulated against the property.                AFFIRMED.

For appellant there was a brief over the names of *Mr. M. B. Meacham, Mr. S. B. Huston* and *Mr. J. N. Johnston,* with an oral argument by *Mr. Meacham.*

For respondent there was a brief with oral arguments by *Mr. H. D. Norton* and *Mr. E. D. Briggs.*

BEAN, J.—It appears from the record that Mrs. Elizabeth A. Smith still holds the promissory notes of the Hydraulic Mining Company for the $12,500 originally loaned by her, which are wholly unpaid. It is shown by the evidence that the interest thereon

is in arrears from 1915. It further appears that defendant, Elizabeth A. Smith, holds the title to the mining property of the Hydraulic Mining Company under the conveyance of March 28, 1902, renewed by deed of June 10, 1907, and she still holds an interest in the property conveyed by the trust deed which has been foreclosed, in lieu of $11,500 par value of the bonds of the Three Pines Timber Company, as additional security for the loan, in accordance with the terms and provisions of the instrument of defeasance dated and acknowledged on June 10, 1907.

Defendant, Elizabeth A. Smith, set forth in her answer and established by her testimony the facts, in substance, as herein set forth.

The Hydraulic Mining Company by its reply put in issue the allegations of the answer and set up five further and separate defenses to the matters alleged in defendant's answer, using the language of plaintiff's brief, as follows:

"First: The foreclosure proceeding, the stipulation and the decree, heretofore referred to.

"Second: That the defendant received the bonds and the note $2,039.75 in full satisfaction of the debt.

"Third: The statute of limitations as to the original debt, and the original conveyance of the mining property.

"Fourth: The statute of limitations as to the second conveyance of the mining property.

"Fifth: That the debt was paid by the sale of the property upon execution and the subsequent payment of certain small amounts of money."

The plaintiff, upon this appeal, submits that the following questions are involved in this suit, namely:

"1. The effect of the stipulation and decree exonerating the mining property from any claim upon the part of the defendant.

"2. Conceding that the original debt was not paid by the delivery of the bonds, was it not paid by the foreclosure and sale thereunder?

"3. Was the original debt, and a right of action upon the conveyance of the mining property, barred by the statute of limitations?

"4. Was the right of action upon the second conveyance of the mining property, barred by the statute of limitations?

"5. Were the bonds delivered to the defendant as collateral security, or in full payment of the debt?"

As to the plaintiff's claim that the notes of defendant, Elizabeth A. Smith, were paid by the delivery of the $12,500 par value of the bonds of the Three Pines Timber Company, on or about June 10, 1907, it is sufficient to say that it is not borne out by the testimony. The evidence is overwhelmingly to the contrary. It shows that the bonds of the Three Pines Timber Company were taken by Mrs. Smith at the earnest solicitation of the two officers and owners of the plaintiff corporation, George E. Howland, president, and Jefferson D. Cook, secretary, in lieu of timber land to which she held the title as an additional security for the loan, in order that the Three Pines Timber Company might convey the land to a trustee and provide for the bond issue. At the time of the delivery of the timber company bonds to Mrs. Smith the plaintiff, by its officers, executed a memorandum which, after reciting the fact of the indebtedness to Mrs. Smith in the sum of $12,500 and the fact that the bonds of the Three Pines Timber Company had been delivered to Mrs. Smith, and the Hydraulic Mining Company had conveyed the mining property to Mrs. Smith, that she, the said Elizabeth A. Smith, should reconvey unto the first party, the Hydraulic Mining Company, the said mining prop-

erty when she should have been paid the full sum of
$12,500 with interest at 8 per cent per annum from
July 1, 1907, and reciting further that there should
be paid to Elizabeth A. Smith the sum of $12,500,
either by the retirement and liquidation of the bonds
or from the sale of the mining premises, and in the
event that the indebtedness should be paid from the
mining property or the sale thereof, that thereupon
the bonds should be delivered to the Hydraulic Min-
ing Company or its assigns. It should be noted here
that the equity of the plaintiff in the bonds mentioned
has never been foreclosed. The claim of plaintiff
that the bonds were taken as payment is in direct
conflict with its formal agreement in writing executed
at that time, and left where it remained with W. I.
Vawter, who was agent for Mrs. Smith until the
time of his death in 1916: It is the claim of Mr.
Jefferson D. Cook, who is now the principal party in
interest, that the written agreement showing that
Mrs. Smith held the mining property as additional
security for the notes was not to be delivered to
Mrs. Smith, and that the mining property was only
held to secure the note of $2,039.75 given at that
time for interest that was in arrears. This claim was
never made on behalf of plaintiff during the lifetime
of Mr. Vawter. We concur in the findings of the
trial court to the effect that the $12,500 has never
been paid, and that Mrs. Smith holds the title to the
mining property as partial security therefor.

It is asserted on behalf of plaintiff that the title
of Mrs. Smith to the mining property was released by
virtue of the stipulation made in the foreclosure
suit of *Vawter* v. *Three Pines Timber Co., et al.*, filed
February 11, 1913. In the second amended complaint
in that suit the Hydraulic Mining Company, Jeffer-

100 Or.—7

son D. Cook and George E. Howland were brought
in as defendants. In this complaint it was alleged
in substance that in addition to the bonds held by
Elizabeth A. Smith as security, she also held as ad-
ditional security the conveyance of the mining prop-
erty from the Hydraulic Mining Company which is
involved in the present suit. No pleadings of any
nature whatsoever were filed by the Hydraulic Mining
Company in the defense of the foreclosure suit. On
April 28, 1913, the stipulation was entered into, stip-
ulating for the foreclosure of the trust deed and in
regard to sundry matters and dealings relating to
timber bonds with one Steel. The stipulation pro-
vided for dismissal of the suit as against Cook and
Howland and the Hydraulic Mining Company. Para-
graph 5 of the stipulation specifies the lands upon
which the decree was operative. Paragraph 6 de-
scribes lands on which the decree was operative sub-
ject to prior liens. Paragraph 5 also includes within
its description the lands of the Hydraulic Mining
Company, as we understand, for the purpose of de-
scribing the timber thereon which had been trans-
ferred to the Three Pines Timber Company, and
excepting those certain mining claims and mining
rights contained in 181.22 acres of the land. Para-
graph 7 provides as follows:

"It is Further Stipulated, and the decree to be
entered in this cause shall so provide, that any lien,
claim or right so created in or upon any of the other
properties described in the pleadings in this cause,
by said trust deed or mortgage, and that all of such
properties other than the properties described in
paragraphs 5 and 6 of this stipulation, are released
and discharged from the lien of said trust deed or
mortgage, for the foreclosure of which this suit was
brought, and are further released and discharged

from this suit, and from the claims of all and singular the parties to this suit.''

The purpose of the foreclosure suit was to foreclose the trust deed given to secure the Three Pines Timber Company bonds. The Hydraulic Mining Company was not a party to the decree in that suit. Its name was mentioned in the amended complaint for a time, and then the Hydraulic Mining Company and the matter of the deed to defendant Elizabeth A. Smith were dropped out. The property not mentioned in paragraphs 5 and 6 of the stipulation was released and discharged from the lien of the trust deed and discharged from the suit. That appears to be the object of the release. It seems to the writer that the words added, namely, ''and from the claims of all and singular the parties to this suit,'' are simply used to signify that the property should not be subject to the decree to be entered, but that the parties released their claims as such parties by virtue of the trust deed which was to be foreclosed. The Hydraulic Mining Company was not a party to the stipulation. The property involved in the case at bar was conveyed to Mrs. Smith by two deeds of conveyance. It would indeed be an anomalous situation if, in the preparation for the entry decree of foreclosure against other property not contained in the deed of conveyance, a few words added to a stipulation made by an agent without written authority could take the place of a conveyance of real estate. Such was never the intention of either of the parties to the present suit. It does not appear that the parties have so treated the stipulation. In entering the decree that record recites that the properties referred to ''are wholly released, relieved and discharged from any and every claim, lien or demand whatsoever, claimed or asserted

in any of the pleadings in this suit, and by any and every party to this suit, are wholly released and discharged from this suit and from the operation of this, or any subsequent decree entered herein."

1. It does not appear from the decree that it was even in the mind of the court to release the mining property from the lien of defendant's deed. A solemn deed of conveyance should not be canceled by any such legerdemain.

The plaintiff submits that:

"Conceding that the original debt was not paid by the delivery of the bonds, was it not paid by the foreclosure and sale thereunder?"

This question must be answered in the negative. The property was sold in a suit to foreclose a trust deed given to secure the payment of the bonds of the Three Pines Timber Company, of which Mrs. Smith held $12,500 par value as collateral security. The trustee, in order to protect the security, bid in the property at the sale as such trustee.

2. It is stated in 19 R. C. L., page 578, Section 391, regarding the purchase by pledgee of mortgagee, as follows:

"The weight of authority is apparently to the effect that the pledgee of a mortgage as collateral security, who forecloses the same and purchases the property, holds the title subject to a trust in favor of the pledgor."

We believe the rule to be as applied to the present case that where the pledgee makes the pledgor a party to the foreclosure proceeding, and forecloses the pledgor's right of equity in the property, the pledgee may purchase at the sale, and upon accounting for the purchase money, is under no obligation to surrender the land to the pledgor. It will be remem-

bered, however, that in the foreclosure suit referred to, the pledgor, the Hydraulic Mining Company, was not a party to the proceedings in so far as to be affected or foreclosed by the decree: 31 Cyc. 831; *Anson* v. *Olin,* 145 Ill. 158 (34 N. E. 55); *Bloomer* v. *Sturges,* 58 N. Y. 168.   It should be remembered that the Hydraulic Mining Company obtained the loan from Mrs. Smith and pledged the bonds referred to as collateral security for the payment of the loan.

3. The rule is stated thus: In such cases the pledgee foreclosing the mortgage securing the collateral may purchase the same on foreclosure sale, and he will hold the property thus purchased as he held the mortgage, subject to reclamation by the pledgor upon his payment of the debt, the doctrine of merger not applying in such case, as by the foreclosure, the land becomes substituted for the mortgage, and the pledgor has the right, upon payment of the debt which he secured by the assignment, to reclaim and hold the land as his own property: 2 Jones on Mortgages (7 ed.), §§ 870 and 1880; *Mareck* v. *Minneapolis Trust Co.,* 74 Minn. 583 (77 N. W. 428); note, 16 Ann. Cas. 126, and authorities cited; 19 R. C. L., p. 578, § 391; 21 R. C. L., p. 667, § 30.

The foreclosure suit was simply a proceeding by Trustee Vawter to foreclose the trust security, to the end that the proceeds might be applied in payment of the bonds, a part of which Mrs. Smith held as collateral.   The foreclosure did not produce any cash, but Mr. Vawter's successor in office bid in the property, and still holds the same, although, as heretofore stated, no sheriff's deed has yet been executed.   The bonds previously held by Mrs. Smith as collateral are merged by the foreclosure.   The Hydraulic Mining Company, Cook, and Howland, the pledgors, will be

entitled to have that interest when they shall have paid the sums due Elizabeth A. Smith: *Bank* v. *Seaweard,* 78 Or. 567 (152 Pac. 883). In the case of *Union Trust Co.* v. *Hasseltine,* 200 Mass. 414 (86 N. E. 777, 16 Ann. Cas., at page 125, et seq.), the majority rule is thus stated:

"With regard to the title acquired by the pledgee who purchases the mortgaged property at the foreclosure sale, it has been said: 'The law is that, when a mortgage which secures choses thus held is foreclosed, and the land bid in by the pledgee, it becomes by substitution the collateral security, taking the place of the choses which the mortgage secured.'"

It is the contention of the plaintiff that the statute of limitations was run against Mrs. Smith's deed construed as a mortgage. When the new arrangement was consummated on June 10, 1907, the obligation of the mining company to Mrs. Smith was in arrears in interest in the sum of $2,039.75. According to Mrs. Smith's testimony, and also the admissions of Mr. Cook, the last-mentioned amount for which a note was given was paid at different times, being completed August 14, 1907. The evidence does not show that the note given for this interest was accepted as a payment. This suit was commenced August 3, 1917. The answer of defendant, in the nature of a cross-complaint, was filed November 17, 1917. Beginning with June 4, 1908, Trustee Vawter received, on account of the Three Pines Timber Company for stumpage, various sums of money, and distributed the same to the bondholders in payment on their bonds. These amounts were necessarily credited upon the principal claim. Mrs. Smith received on the following dates the following amounts, namely: June 4, 1908, $500; May 6, 1909, $500; January 4, 1910, $500;

December 6, 1910, $500; February 4, 1911, $500; May 1, 1913, $1,500; April 5, 1914, $372.60; October 7, 1915, $405. These amounts were received on account of the proceeds and earnings of the property which was given as security for her claim. The last mentioned of $405 was paid as alleged in plaintiff's reply in addition to the money received on the sale of the property by the sheriff of Jackson County and of Josephine County. Plaintiff asserts that it "more than paid in full all sums due the defendant herein on account of the original loan of $12,500."

Pursuant to the plans of Messrs. Cook and Howland for the issue and delivery of the Three Pines Timber Company bonds, the trust instrument authorized the trustee to pay the indebtedness of the Hydraulic Mining Company to Mrs. Smith, amounting approximately to $15,000. The several payments made by the trustee to which we have referred were made in accordance with such authority. They were made before the expiration of the ten years limitation. Ever since such payments the plaintiff and its owners and managers, Messrs. Cook and Howland, have acquiesced therein, pleading a payment in 1915 in its reply. Apparently it approved the same afterwards, as well as authorizing the payments beforehand.

In 1913, the legislature enacted Chapter 304, General Laws of Oregon, 1913, which reads as follows:

"Section 1. No mortgage upon real estate now, heretofore or hereafter given, shall be a lien or encumbrance, or of any effect or validity for any purpose whatsoever, after the expiration of 10 years from the date of maturity of the obligation or indebtedness secured or evidenced by such mortgage, or from the date to which the payment thereof has been extended by agreement of record. If the date of the maturity of such obligation or indebtedness is not

disclosed by the mortgage itself, then the date of the execution of such mortgage shall be deemed the date of the maturity of the obligation or indebtedness secured or evidenced by such mortgage.

"Section 2. After 10 years have elapsed from the date of the maturity of any mortgage upon real estate, as herein provided in Section 1 of this act, such mortgage shall conclusively be presumed to be paid, satisfied and discharged, and no action, suit or other proceeding shall.be maintainable for the foreclosure of the same."

In 1917, the legislature passed an act providing how the act of 1913 should be construed by adding thereto (See General Laws 1917, p. 39):

"Section 4. Nothing in this Act contained shall be construed to bar the foreclosure of any such mortgage nor shall said Act or any portion thereof be plead or considered as a defense of any such foreclosure, if within ten years immediately preceding the commencement of the suit to foreclose there shall have been voluntarily paid any portion of the debt secured by the mortgage, or any interest thereon; *provided,* that the premises covered by such mortgage are still owned by the original mortgagor and are unaffected by any lien or liens, or rights of third parties which may have attached or intervened, subsequent to the expiration of the ten year period in Section 1 of this Act described."

In view of Section 25, Or. L., we question if the amendment of 1917 was of any efficacy as to a change in the law. Section 25 has been on our statute books since 1862, and reads as follows:

"Whenever any payment of principal or interest has been or shall be made upon an existing contract, whether it be bill of exchange, promissory note, bond, or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made."

4. Mrs. Smith was undoubtedly obliged to apply the payments upon the obligation of the plaintiff. Conceding without deciding that the act of 1913 applied to a deed executed as a mortgage, which the writer seriously questions, the payments made by plaintiff upon the obligation in favor of defendant, Elizabeth A. Smith, tolled the statute of limitations, which has not run against either the deed given as security or the notes of plaintiff. While Mr. Vawter's death has occasioned some obscurity in details, yet the record of his transactions as the agent of Mrs. Smith which he left is plain and is in entire conformity to the claim made by Mrs. Smith in her answer: *Kaiser* v. *Idleman,* 57 Or. 224 (108 Pac. 193, 28 L. R. A. (N. S.) 169).

It follows that the decree of the lower court should be affirmed, and it is so ordered.          AFFIRMED.

BURNETT, C. J., and McBRIDE and HARRIS, JJ., concur.

---

'Argued February 25, affirmed April 5, 1921.